Wynona R. METCALF

v.

MARINE COLLOIDS, INC., et al.

Supreme Judicial Court of Maine.

Jan. 6, 1972.

Grossman, Faber & Miller, by Barry M. Faber, Rockland, for plaintiff.

Mahoney, Desmond, Robinson, & Mahoney, by Lawrence P. Mahoney, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WEBBER, Justice.

On May 7, 1970 Patrick D. Metcalf while employed by Marine Colloids, Inc., sustained injuries resulting in his death on May 8, 1970. A petition was filed with the Industrial Accident Commission by Wynona R. Metcalf, mother of the deceased employee, seeking an award of compensation based upon her claimed dependency upon the earnings of her deceased son for support. An answer was filed admitting the employment and the personal injury resulting in death, but denying that the accident arose out of and in the course of employment. After a full hearing in the course of which the Commissioner viewed the premises, the petition was denied. From a pro forma decree of the Superior Court, petitioner appeals.

■ Metcalf was found unconscious on the floor of his employer's warehouse in which bales of peat moss were stored. No eye witness saw him at the moment he fell to the floor. Although the petitioner has the burden of proving by the fair preponderance of the evidence that the accident occurred in the course of and arose out of the employment,[1] she is aided initially by a statutory presumption applicable in such a case as this. 39 M.R.S.A., Sec. 64-A provides in part, "In any claim for compensation, where the employee has been killed, * * *, there shall be a rebuttable presumption that the employee received a personal injury by accident arising out of and in the course of his employment, * * *." The presumption is a procedural device which casts upon the employer the burden of going forward with evidence. If and when evidence is produced which is believed by the Commission and which makes it as probable that the presumed fact did not exist as that it did exist, the presumption has fulfilled its procedural task and thereupon disappears from the case. If, however, such evidence is not produced, the presumption persists and compels a decision on the issue of compensable accident favorable to the petitioner. See Hinds v. John Hancock Ins. Co. (1959) 155 Me. 349, 364, 155 A.2d 721.

So here when it was established that the employee was killed as the result of an injury suffered on the employer's premises, the statutory presumption was raised and was adequate to support an award of compensation in the absence of effectively rebutting evidence. In the instant case, however, such evidence was offered and the first task of the Commission was to determine whether that evidence and the inferences rationally drawn therefrom made it at least as probable that the accident did *not* occur in the course of and arise out of the employment as that it did. The Commissioner who heard the matter found that the probabilities were at least in equilibrium whereupon, if that finding was justified, the presumption disappeared as a matter of law. Thereafter the issue was whether or not the petitioner had carried her burden of proof upon the whole evidence without the aid of the presumption. This is the effect of the *Hinds* rule.

In reaching the conclusion that the probabilities were at least in equilibrium, the Commissioner had before him evidence on the basis of which he could rationally conclude that it was probable that neither the deceased employee nor any other members of his work group had any tasks or duties which would require their presence on the top of the bales of moss stacked in the warehouse; that while waiting for the return of their leadman with directions as to their next employment duties, Metcalf and one or two others for purposes of their own climbed with some difficulty up the sides of the stacked bales to the top; that

1. 39 M.R.S.A., Sec. 51 as amended provides in pertinent part, "If an employee * * * receives a personal injury by accident arising out of and in the course of his employment, he shall be paid compensation * * *."

Metcalf made his way along the tops of the bales at a height of about ten feet above the floor; that a bale was dislodged from the stack; and that Metcalf fell from the point where the bale was dislodged to the floor of the warehouse, thereby suffering fatal injuries. The Commissioner could properly infer that a position on top of bales stacked as these were was a comparatively unsafe location in which to await the return of the leadman whereas the floor of the warehouse was a reasonably safe place in which to spend the waiting period.

■ Certain basic principles of law have application here. "To occur *in the course of* the employment the injury must have been received while the employee was carrying on the work which he was called upon to perform, or doing some act incidental thereto. * * * The accident to be compensable must occur within the period of the employment *at a place where the employee reasonably may be* in the performance of his duties and while he is fulfilling those duties, or engaged in doing something incidental thereto. He should not be in a place forbidden by the employer. * * * *or in a clearly unsafe place, when the employer has provided a safe one."* (Emphasis supplied). Boyce's Case (1951) 146 Me. 335, 341, 81 A.2d 670, 673. The Court also stated, *"To arise out of* the employment the injury must have been due to *a risk of the employment.* * * * There must be some *causal connection* between the conditions under which the employee worked and the injury which he received. If the injury is sustained by reason of some cause *that has no relation to the employment* it does not arise out of it." (Emphasis ours.) "The test is always whether or not the employee was injured as a result of a hazard of his employment." Bouchard v. Sargent, Inc. (1956) 152 Me. 207, 211, 127 A.2d 260, 262. An accident is not compensable when one deliberately abandons his work and incurs a risk entirely disassociated from his employment. Bouchard v. Sargent, Inc., supra.

■ Applying these rules to the evidence which the Commissioner deemed credible and the inferences properly to be drawn therefrom, the Commissioner as we have noted concluded that it was as probable as not that nothing pertaining to the workman's employment took him to the top of the bales and that upon engaging in this unwarranted activity he left the "zone of employment created risk." See Babine v. Lane Const. Co. (1958) 153 Me. 339, 343, 138 A.2d 625. Upon this finding, supported as it was by credible evidence, the presumption disappeared from the case and the petitioner was required to sustain her burden of proof unaided by the presumption. This burden might have been satisfied by evidence, if such had been available, proving some relationship between employment and the presence of the employee on the bales. An employee would be covered if, for example, he had a duty to inspect or count or move the stacked bales or a duty with respect to the warehouse premises which might reasonably be performed by first climbing to the top of the bales. There is here a total absence of such evidence. Even if, as seems probable, the employee was engaged in a frolic of his own, he would not be precluded from coverage if additionally it had been shown that such frolics on the bales by employees had occurred on prior occasions and were known or ought reasonably to have been known by the employer. In such cases the risks arising from the hazard of such a frolic are deemed to be incorporated into the risks of the employment. Petersen's Case (1942) 138 Me. 289, 25 A.2d 240; see Bouchard v. Sargent, Inc., supra. Again there was no such evidence in the instant case and indeed the contrary is suggested. On this posture of the evidence, therefore, the Commissioner properly held that petitioner had failed to sustain her burden of proof.

■ There is yet another reason why this petitioner could not prevail. It was incumbent upon her to prove additionally her financial dependency upon her deceased son. Although the Commission

deemed it unnecessary to reach this issue and therefore made no finding with respect to it, we have carefully reviewed the record and find it devoid of the requisite proof of dependency. 39 M.R.S.A., Sec. 2, subsec. 4 provides in part: " 'Dependents' shall mean members of an employee's family or next of kin who are wholly or partly dependent upon the earnings of the employee for support at the time of the accident." Our Court construed the meaning of "dependent" in Drouin v. Ellis C. Snodgrass Co. (1941) 138 Me. 145, 149, 23 A.2d 631, 633 in these terms: "The mere reception of assistance in the form of contributions or otherwise does not of itself create dependency. The controlling test is was the assistance relied upon by the claimant for his or her reasonable means of support and suitable to his or her position in life." See also Henry's Case (1924) 124 Me. 104, 106, 126 A. 286. The undisputed evidence is that petitioner, owner of real estate, was at the time of the accident gainfully employed and earning $93.00 per week. The evidence falls far short of demonstrating that the modest gifts and assistance given her by her son from time to time were relied upon by her for her "reasonable means of support," or that they were either necessary or adequate for that purpose. A contrary finding by the Commission, if one had been made, would have found no support in the evidence.

Appeal denied. Decision of Industrial Accident Commission affirmed. Ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of the record, be paid by the Appellees to the Appellant.

WERNICK, Justice (concurring).

I agree with the result reached, and the essentials of the analysis employed, in the Opinion for the Court. I think it beneficial, however, that I offer a supplemental clarification of my views.

As to the compensability of the accident, the present decision is a striking concrete illustration of the difference in result which can be reached because of the difference in theory and practical operation between: (1) a "rebuttable presumption" which assists the petitioner in meeting the ultimate burden of proof to establish a compensable accident, and which functions with the legal effect accorded under the approach of Hinds v. John Hancock Ins. Co., 155 Me. 349, 155 A.2d 721 (1959), and (2) an affirmative defense by which the ultimate burden of proof is taken from the petitioner and is placed upon the employer and insurance carrier to negate the existence of the elements of a compensable claim.

In the present instance the Commissioner's determination against the petitioner is sustained, in part, on an analysis regarding the position of the deceased employee, Metcalf, atop the bales that (1)

"The Commissioner could properly infer that a position on top of bales stacked as these were was a comparatively unsafe location in which to await the return of the leadman whereas the floor of the warehouse was a reasonably safe place in which to spend the waiting period";

and (2) petitioner had failed to sustain the ultimate burden of proof reposing upon her to show, by a fair preponderance of the evidence, that this increase in the qualitative risks of danger to the deceased employee, Metcalf, was causationally related to his employment.

Had the ultimate burden of proof been cast, however, as an incident of an affirmative defense, upon the employer and insurance carrier to establish the *absence* of any causational relationship between the qualitatively increased hazards to the deceased employee, Metcalf, and the employment, a decision in this case that a compensable accident had occurred would, in my judgment, have been required.

There was a lack of evidence which could indicate directly, affirmatively and specifically the purpose for which Mr.

Metcalf ascended to the top of the bales or the exact nature of what Mr. Metcalf was doing while he was atop the bales. The evidence adduced was *negative* only, to the effect that it was *not known* why Metcalf went to the top of the bales, it was *not known* what he was doing on the bales and it was *not known* that there were any tasks or duties connected with his employment which were responsible for his presence, or conduct, upon the bales.

Thus, were the ultimate burden of proof upon the employer and insurance carrier to prove by a fair preponderance of the evidence that on the particular occasion in question there was, in ultimate fact, an entire absence of any employment reason for Mr. Metcalf to have been on top of the bales, the negative evidence which exists in this case would have been insufficient to meet the requisites of such ultimate burden of proof.

It eventuates, therefore, that the petitioner's claim is here defeated, in one aspect, solely because the Legislature in 39 M.R.S.A. § 64–A utilized the words "rebuttable presumption" and thereby allowed the ultimate burden of proof to establish the elements of a compensable claim to remain upon the petitioner and the *Hinds* "rebuttable presumption" technique to govern. Furthermore, this result is reached in spite of the explicit provisions in 39 M.R.S.A. § 92 mandating a liberal interpretation of the Workmen's Compensation Act, "with a view to carrying out its general purpose", —a purpose characterized by this Court in Estabrook v. Steward Read Company, 129 Me. 178, 151 A. 141 (1930) to be a "general humanitarian purpose" (p. 183, 151 A. 141) and in White v. Eastern Manufacturing Co., 120 Me. 62, 69, 112 A. 841 (1921), and as quoted in Riley v. Oxford Paper Company et al., 149 Me. 418, 424, 103 A.2d 111 (1954), to be "beneficent."

Much as this result disturbs me, I must, nevertheless, approve it. I cannot avoid

the conclusion that the Court would exceed its judicial function and encroach upon the legislative domain were it, in the present instance, to interpret the "rebuttable presumption" language of 39 M.R.S.A. § 64–A,—and which first appeared in 1965 (P. L.1965, Chapter 408, § 7, effective November 30, 1965)—to establish a legislative change in the ultimate burden of proof from the petitioner to the employer and insurance carrier. Once this Court had, in 1959, presented its comprehensive analysis and decision in Hinds v. John Hancock, supra, the words, "rebuttable presumption", became words of art. By virtue of *Hinds* the concept of a "rebuttable presumption" was clearly and definitively established to import, as a generalized legal principle, a procedural instrumentality to assist the party upon whom is imposed the ultimate burden of proof on an issue rather than one which effects a transfer of the ultimate burden of proof to the opposite party.

39 M.R.S.A. § 64–A was enacted after sufficient time had elapsed for *Hinds* to have become well known in the jurisprudence of Maine. Other legislatures of Maine, even prior to the time *Hinds* had been decided, had already revealed in other contexts involving tort claims relating to a deceased person (e. g., R.S. of Maine 1954, Chapter 113, § 50, reaffirming principles first established by the Legislature in 1913 in P.L. 1913, Chapter 27), that a clear and definitive technique was known by which, when it was intended that an affirmative defense be created, together with a transfer of the ultimate burden of proof, such objective could be indisputably accomplished.[1] In light of these facts the only reasonably fair interpretation open to a Court which seeks to avoid judicial legislation is the one adopted by the Opinion of the Court in the present case—that the ultimate burden of proof had remained upon the petitioner, as it generally is in workmen's compensation claims, because 39 M.

---

1. For a more comprehensive analysis of this historical development in relation to the remedy for wrongful death, see Parker v. Hohman, Me., 250 A.2d 698, 700, 701 (1969).

R.S.A. § 64–A had failed to create an affirmative defense placing the ultimate burden of proof upon the employer and insurance carrier.

If it had been the intention of the Legislature which enacted 39 M.R.S.A. § 64–A to accomplish such a transfer of the ultimate burden of proof, the decision of this case will serve notice that legislative use of the words "rebuttable presumption" without more,—and while Hinds v. John Hancock, supra, remains the law of Maine, —might well be inadequate. To effectuate such purpose, and to eliminate all doubts, the Legislature should avoid reliance upon the words "rebuttable presumption" and should state plainly and explicitly that it is intending to change the ultimate burden of proof by creating an affirmative defense to be borne by the employer and the insurance carrier.