ADMIRALTY–ALASKA GOLD MINING CO., a corporation, and Sayre & Toso, Inc., a corporation, Plaintiffs, v. Henry BENSON, as Commissioner of Labor, J. Gerald Williams, as Attorney General, and Ross P. Duncan, as Insurance Commissioner, comprising The Alaska Industrial Board, and Myrtle Gobin, for herself and as Guardian of the Minor Children of Sam W. Elsom, Deceased, Defendants.

No. 7785–A.

United States District Court, Alaska. First Division, Juneau.

Oct. 22, 1958.

Robert J. Annis, of Robertson, Monagle & Eastaugh, Juneau, Alaska, for plaintiffs.

Robert Boochever, of Faulkner, Banfield & Boochever, Juneau, Alaska, for defendant Myrtle Gobin.

KELLY, District Judge.

This matter comes before this Court on an appeal by the Admiralty-Alaska Gold Mining Co., a corporation, and Sayre & Toso, Inc., a corporation, its insurance carrier, (hereafter "employer") from an award of the Alaska Industrial Board in which the Board held that in addition to the surviving spouse receiving the statutory death award in the sum of $9,000 under subsection A 2 of Sec. 43–3–1 A.C.L.A.1949, as amended, the petitioner herein, the former wife, divorced and remarried, of the deceased employee, as guardian of the children born of the marriage of the petitioner and said deceased employee, was awarded under subsection A 5 of said act as amended, the sum of $9,000 as guardian of said minor children, with an additional $1,800 for each child, (the total amount under subsection A 5 not to exceed $15,000) so that the total award resulting from employee's death would amount to $24,000.

The facts as found by the Board are substantially as follows:

Sam W. Elsom was killed as the result of an accidental injury arising out of and in the course of his employment with the employer at Funter, Alaska, on April 18, 1957.

The deceased employee had formerly been married to Myrtle Elsom, now Myrtle Elsom Gobin, and as issue of said marriage there were five minor children at the time of the employee's death, all under the age of 18 years.

The mother of these children, the petitioner herein, had obtained a divorce from the deceased employee in Montana on December 15, 1949. This decree of divorce did not provide for payments to be made to the plaintiff wife therein (the petitioner here) for support and mainte-

nance of the children, whose custody was awarded to their mother. Thereafter, the deceased employee herein did contribute small amounts to the support of the children of approximately ten payments of $25 to $35 each over the period since the divorce (about eight years), and also from time to time sent clothing and made promises to the children and to their mother that he would make regular support payments at such time as he obtained steady employment.

The deceased employee, after his divorce as aforesaid, married Thelma Elsom, whose claim for a widow's award of $9,000 under subsection A 2 of the act as amended was not contested. The former wife, Myrtle Elsom, the petitioner herein, after her divorce from the deceased employee, married James Gobin. The children were not adopted by Mr. Gobin or anyone else. It is apparent that Gobin has supported these children since this marriage.

Myrtle Elsom Gobin was duly appointed guardian of the five minor children, and filed the application for adjustment of claim, seeking compensation for the minor children under the provisions of the Alaska Workmen's Compensation Act.

■ After stating the facts as aforesaid, the Board then sets forth that the claim presents questions involving the construction of subsections A 2, A 3, and A 5 and of Sec. 38 of the Act.

Subsection A 2 provides for an award to the surviving spouse of a deceased employee, and there is no argument or dispute regarding the fact that the surviving widow of the deceased employee should receive the $9,000 under this section.

The Board then points out that subsection A 3 specifies:

"that 'when such married employee' had children under 18 years, *his widow* shall be entitled

to receive the sum of $1,800 for each such child, but not to exceed the sum of $6,000 for such dependent children." (Emphasis supplied.)

and the Board further points out that subsection A 5 of the act specifies:

"that where the deceased employee was *a widower* but left one or more minor orphan children, the sum of $9,000 shall be paid to a guardian appointed for said children with an additional sum of $1,800 for each additional orphan child, the total amount not to exceed $15,000.00." (Emphasis supplied.)

The Board then further points out that Section 43–3–38 A.C.L.A.1949, defines a "child" or "children" as one under the age of 18 years *depending upon the injured employee for support,* and defines a "widower" as including one who is divorced and is not required by decree of divorce to contribute to the support of his former wife. (Emphasis supplied.)

The Board further found that the minor children named were actually and legally dependent upon the deceased employee for support, following which, the Board made this finding:

"We also hold that this finding, actual dependency, as opposed to legal dependency, is not required under the Alaska definition and that since the natural father had a continuing obligation to support his minor children, the children were 'dependent' regardless of actual dependency. See Juneau Lumber Company v. Alaska Industrial Board, [D.C.] 15 Alaska 101, 122 F.Supp. 663."

The Board found further that the deceased employee was a "widower" under the provisions of the Alaska act; and goes on to say:

"Had that term not been intended to encompass one who remarried after his divorce, the legislature would certainly have included such a limitation on its definition."

Section 43–3–38 of the Act, giving the definitions of terms, defines, for the purposes of the Act, "child" or "children" to mean those under the age of 18 years *depending upon the injured employee for support.*

The term "widower" shall include one who is divorced and *is not required by the decree of divorce to contribute to the support of his former wife.*

The term "married" shall include one who is divorced *but is required by the decree of divorce to contribute to the support of* his former wife.

There is no dispute as to whether the surviving spouse, the second wife of the deceased, is entitled to death benefits under subsection A 2 of the act. Although the deceased was married at the time of his death, the Board also found subsection A 5 where the deceased dies a widower, to be applicable. The decision of the Board in allowing the claimant an award under this latter section was clearly erroneous.

Apparently the Board was of the opinion that Section 43–3–38 in defining a "widower" as one who is divorced but under no obligation by decree of divorce to support his former wife, provided an absolute test of applicability of subsection A 5, without reference to other provisions of the act or the remarriage of the deceased. It is the opinion of this Court that Section 38 merely enlarges the scope of the term "widower" so as to give the same effect to divorce, unaccompanied by a decree of support, as death of a spouse might have during the lifetime of the deceased under provisions of the act. A "widower" is generally to be regarded as one who has lost his wife

through death, *and has not remarried.* Canal National Bank of Portland v. Bailey, 1947, 142 Me. 314, 51 A.2d 482; Calvert v. Fisher, Tex.Civ.App.1953, 259 S.W.2d 944. By statutory definition, a "widower" may also include one who is divorced. In accordance with the above decisions, the legislature must have intended the term "widower" to embrace the ordinary lexicographical meaning of the word with the exception of Section 38. There is no reason to suspect that the legislature contemplated that remarriage of a divorced employee would have a different consequence than remarriage of an employee who has lost his wife through death, in determining whether the employee was a widower at the time of death. The provisions under which the claimant seeks death benefits must be given a time-of-death construction, and since the deceased had remarried and was survived by his second wife, he was not a widower within the meaning of the act and subsection A 5 is not applicable.

Additional support for this view is found in the consistent reference to the maximum sum of $15,000 payable under provisions of the act as death benefits. It is obvious that the legislature contemplated this amount as the maximum payable in all events in total, and not merely the maximum payable under each of the several separate provisions. The various sections providing for death benefits are not mutually exclusive of one another so as to be given independent consideration and construction. There is no indication that the statutory scheme envisions multiple payments by the employer. In considering the above limitation, it would appear that the legislature had intended subsection A 5 to be applicable only in the circumstance where subsection A 2 failed to apply by reason of the fact that no spouse survived the deceased. Otherwise, the limitation on the amount payable as death benefits

could be grossly exceeded. It is also to be noted that amounts payable under the act where the deceased died a widower are similar to those payable where the deceased was married at the time of death. This similarity strongly suggests that amounts payable under subsection A 5 were payable only as an alternative where subsection A 2 did not apply. For the above reasons, it cannot be assumed that the legislature intended that the deceased could be both married and a widower at the time of death so as to justify payments under subsection A 5 to the claimant as guardian of the deceased's children in her custody.

■ We now come to consideration of whether benefits may be awarded the claimant under subsection A 3 for the children in her custody. The claimant relies on the case of Juneau Lumber Company v. Alaska Industrial Board, D.C.1954, 15 Alaska 101, 122 F.Supp. 663 for the proposition that children of a deceased workman are conclusively presumed to be dependent upon him for support, and, that the claimant is therefore entitled to benefits for their welfare. However, the Court is not inclined to view that case as controlling the facts as found here. In that case, a widow of a deceased workman claimed benefits for a foster child of the deceased living with the deceased and claimant at the time of death. In the instant case the children of the deceased were neither living with the deceased nor his widow at death, but had been in the custody of the former wife of the deceased since 1949. It is the former wife who seeks compensation under the above provision.

Subsection A 3 provides that:

"In those cases where such married employee had a child or [minor] children under the age of eighteen (18) years at the time of his death, his widow shall be entitled to receive in addition to

the sum above specified, the sum of One Thousand Eight Hundred Dollars ($1,800.00) for each child under the age of eighteen (18) years, or child wholly dependent on his or her parents for support by reason of mental or physical incompetency   *   *   * "

The classes of children provided for by the above quoted subsection are children under eighteen years, or incompetent children dependent upon the deceased regardless of age.   However, it does not appear that the legislature had in mind that benefits were to be paid without qualification. It is reasonable to assume that children under eighteen are incapable of providing for their own support.   What is suggested by the above subsection is to relieve the widow of a deceased workman of the burden of providing for support for children under eighteen years living with the parents in the ordinary circumstance where the father dies, shifting the burden of the children's support to their mother.   The fact that any benefits payable under this subsection were payable only to the widow gives added significance to the view that it was this situation evisioned by the legislature in providing benefits.   Yet, where children have lived with their mother, the former wife of the deceased, independently of the deceased for a number of years prior to his death, and where the mother has maintained their support apart from any contribution of the deceased, the subsection does not contemplate benefits for the claimant who is providing for the children.   The deceased employee was not required to support these children by the divorce decree.   The mother's second husband, the children's stepfather, had apparently assumed the responsibility of support of the children.   Had the legislature intended these benefits be awarded the claimant for the children under the existing facts, it would have provided for

a method of payment other than that presently confined to the widow. In no sense of the term can the claimant be considered a widow, and it does not appear that any additional burden has been incurred by the claimant as a result of the death of the deceased. As the subsection now provides, benefits for the children are governed by circumstances which exist at death. Since the children were neither in the custody of the deceased nor his widow, no benefits should be allowed.

At most, benefits would be allowed the claimant in the situation found here only if the children were wholly dependent upon the deceased for support. By decree of divorce, custody of the children was granted to the claimant, but the deceased was not required by the decree to contribute to their support. The facts found by the Board indicate that the deceased had made approximately ten payments of $25 or $35 for the care of the children over an eight or nine year period. It is obvious that these contributions made by the deceased were wholly inadequate for support purposes. Even when coupled with occasional gifts of clothing, it would not appear that in any sense of the term could the children be said to be dependent upon the deceased for support. Drouin v. Ellis C. Snodgrass Co., 1941, 138 Me. 145, 23 A.2d 631; Brooks v. Bethlehem Steel Co., 1952, 199 Md. 29, 85 A.2d 471. It must also be pointed out that the legal right of children to support from their parents is a separate and distinct right than that arising to claimants by virtue of the Workmen's Compensation Act. The use of the term "wholly dependent" within the act suggests something other than mere legal or moral responsibility as grounds that would entitle the claimant to benefits. Drouin v. Ellis C. Snodgrass Co., supra; Brooks v. Bethlehem Steel Co., supra. There is some evidence that the deceased made promises to the claimant

that he would contribute to the support of the children. Yet, as gathered from the relatively few payments made by the deceased, and the number of intervening years between the divorce and death of the deceased, the promises were quite illusory. And it does not appear that any reliance whatsoever was made by the claimant on these promises.

The Court is not unmindful of the continued responsibility placed on the claimant and her present husband for the support of the children. However, the Court is not prepared to lend itself to the task of supplementing legislation by judicial opinion so as to entitle the claimant to benefits, where the extent of the rights of the parties involved are set forth in the statute. For the reasons stated, the claimant is entitled to no benefits under subsections A 3 and A 5.

This matter will be remanded to the Board for a redetermination of the award consistent with this opinion. Proper order will be presented.